JOE D. WENTZ v. UNIFI, INC. AND NORRIS LEE BLEVINS

No. 8726SC551

(Filed 1 March 1988)

**1. Negligence § 23; Rules of Civil Procedure § 8— contributory negligence—factual inconsistencies—proper under notice pleading**

There was no error in an automobile accident case in submitting contributory negligence to the jury where the parties' pleadings were sufficient to give notice of all theories, claims and facts sought to be proven by each party.

**2. Negligence § 34.1— contributory negligence—evidence**

The evidence was sufficient in an automobile accident case to submit contributory negligence to the jury where there was substantial evidence tending to show that plaintiff was negligent in not keeping a proper lookout and not keeping his car under control, allowing it to swerve or drift into defendant's lane of travel.

**3. Automobiles and Other Vehicles § 45.8— automobile accident—admission of driving record—harmless error**

There was no prejudice in an automobile accident case from the erroneous admission of defendant's good driving record where the jury found defendant negligent.

**4. Automobiles and Other Vehicles § 45.6; Evidence § 33.1— automobile accident—highway patrolman's report—admissible**

A highway patrolman's accident reports were admissible in an automobile accident case as a business records exception to the hearsay rule and as official reports where the reports were fully authenticated and a proper foundation was laid, the patrolman did not express an opinion as to how the collision occurred but merely reported the versions given to him by plaintiff and defendant, and the patrolman testified as to the contents of the first report without objection by plaintiff and the contents of the second report clearly gave plaintiff's version. N.C.G.S. § 8C-1, Rule 803(6) (1986). N.C.G.S. § 8C-1, Rule 803(8).

**5. Evidence § 20; Trial § 14— automobile accident—rebuttal evidence excluded—no abuse of discretion**

The trial court did not abuse its discretion in an automobile accident case by excluding rebuttal evidence where the evidence plaintiff sought to introduce was collateral to the primary issue and too remote in terms of relevancy to have required admission; moreover, it is not at all clear that the evidence would have affected the jury's decision.

APPEAL by plaintiff from *Owens, Hollis M., Jr., Judge*. Judgment entered on the verdict 19 January 1987 in MECKLENBURG County Superior Court. Heard in the Court of Appeals 1 December 1987.

Plaintiff instituted this action to recover personal and property damages arising out of the collision of defendant's (Unifi's) tractor-trailer with plaintiff's vehicle which allegedly resulted from the negligent driving of Unifi's employee, defendant Norris Lee Blevins. Defendants answered generally with denials and alleged as an affirmative defense plaintiff's contributory negligence.

At trial, plaintiff's pertinent evidence consisted of the testimony of plaintiff and his wife, Edna Wentz. Plaintiff testified that on 13 April 1983 while driving his Pinto station wagon north in the right lane of Interstate 77 he was overtaken by two tractor-trailer rigs traveling north in the left lane. As the truck driven by defendant Blevins pulled beside and then fell behind him, "something hit . . . , the left-hand rear of my car, and it took control of it." "I felt a bump on the rear of my car . . . , and it just pushed me sideways down the interstate, . . . . I know I was being pushed from the moment it struck my car, it never let up off my car . . . . I could see it like it was coming in on me, that big bumper, the front of the tractor." After the collision, plaintiff and Blevins remained at the scene. The other truck driver approached Blevins and said, "Did you not see him?" Blevins responded, "I didn't see him until I had him on my bumper."

Plaintiff observed the pavement at the scene and saw skid marks beginning near the right side of the northbound right lane and continuing across the left lane into the median where his car came to rest. While plaintiff and Blevins were still at the scene, Highway Patrolman Robby Yates arrived and talked with plaintiff and Blevins. Plaintiff pointed out the skid marks to Yates. During this time, plaintiff's wife, Edna Wentz, arrived on the scene. She observed and described the same skid marks observed by plaintiff. The next morning plaintiff returned to the scene and took photographs of the skid marks. These photographs were introduced into evidence and appear to show the skid marks plaintiff and Mrs. Wentz described.

Defendants' evidence consisted of the testimony of defendant Blevins, Patrolman Yates, and two accident investigation reports prepared by Yates. Blevins testified, in summary, that he was driving north in the left lane of I-77 when plaintiff's car suddenly appeared in the left lane at an angle in front of his truck, Wentz's car apparently being out of control. Blevins had been driving in the left lane for about a mile and had remained in the left lane until plaintiff's car appeared in front of him. Blevins "sat down" on his brakes, but collided with the left side of plaintiff's car. He felt no contact until Blevins' car appeared in front of him. Blevins left tire marks in the left lane while trying to avoid plaintiff's car. Blevins denied remarking to the other truck driver that the first time he saw plaintiff's car was when he was on Blevins' bumper.

Blevins and plaintiff talked with Patrolman Yates. Blevins told Yates ". . . we was coming up through there . . . and the car appeared in front of me and I bumped it and it went off into the median." On cross-examination, Blevins explained that he was not testifying that plaintiff's tire marks did not begin in the right lane, only that he did not notice them.

Patrolman Yates testified that after he arrived at the scene he talked with plaintiff and Blevins. Plaintiff told Yates that as he was traveling north in the right lane he felt a bump, his car went out of control, crossed over the passing lane and into the median. Blevins told Yates that he was in the passing lane, noticed a small car come in front of him, bumped the car as it came in front of him, and "the car went to the median." Yates then identified the accident report he prepared that evening, which reported what he had seen and been told by the drivers. Yates also identified a second report he prepared two or three weeks later, following further investigation. Yates then testified from the contents of his first report: "Vehicle Number 1 (which was the Wentz Pinto), was in the right lane of I-77 northbound. Vehicle Number 2, the tractor-trailer driven by Mr. Blevins, was in the passing lane of I-77 northbound. The driver of Vehicle Number 1 lost control of the vehicle and skidded into the path of Vehicle Number 2. Vehicle Number 1 was struck in the left side of the vehicle before traveling into the median and striking an embankment." Yates testified that as a result of letters written by plaintiff he and a supervisor conducted a second investigation, after which he prepared a second report. In his second report, Yates reported that plaintiff stated that "the truck, Vehicle Number 2, struck him causing him to lose control." Yates then testified that he had not been told the foregoing at the scene of the accident on April 13. Yates also testified that his second report depicted a more detailed drawing of the scene showing plaintiff's skid marks in the right lane and Blevins' skid marks in the left lane. Both of Yates' reports were admitted into evidence.

On cross-examination, Yates was asked to read his entire description of events in his second report. His response was: "Vehicle Number 1 was in the right lane of I-77 northbound. Vehicle Number 2 was in the passing lane of I-77 northbound. Vehicle Number 1 and Vehicle Number 2 made contact with each other causing Vehicle Number 1 to go out of control crossing in front of

Vehicle Number 2 into the median striking an embankment. The driver of Vehicle Number 1 stated that the truck, Vehicle Number 2, struck him, Vehicle Number 1, causing him to lose control. The driver of Vehicle Number 2 stated that as far as he knew, he made no contact with Vehicle Number 1 until Vehicle Number 1 crossed in front of him." The following colloquy then occurred:

> Q: Is that statement an accurate description of your understanding of what took place?
>
> A: No.
>
> Q: . . . [y]our report states that it's unable to determine whether any violation is indicated, does it not?
>
> A: Yes, sir, it doesn't show who was at fault.
>
> Q: That's right, you couldn't tell whether Mr. Blevins . . . committed any violations, or whether Mr. Wentz . . . committed any violations, is that correct?
>
> A: That's correct.

Other aspects of the evidence at trial will be discussed as necessary in our opinion.

The jury answered the issue of negligence against defendants and the issue of contributory negligence against plaintiff. From judgment entered on the verdict, plaintiff appeals.

*Moore & Van Allen, by Randel E. Phillips and Charles E. Johnson, for plaintiff-appellant.*

*Hedrick, Eatman, Gardner & Kincheloe, by Edward L. Eatman, Jr. and Mark C. Kurdys, for defendant-appellees.*

WELLS, Judge.

[1]  Plaintiff, in his first argument contends that because of the factual inconsistencies between the plaintiff's and defendants' pleadings, the trial court committed error in submitting the issue of contributory negligence to the jury. Relying on *Dennis v. Von-Cannon*, 272 N.C. 446, 158 S.E. 2d 489 (1968) and *Jackson v. McBride*, 270 N.C. 367, 154 S.E. 2d 468 (1967), plaintiff argues that acceptance of the facts which he alleges in his complaint must necessarily preclude the acceptance of facts alleged by defendants in their answers thereby negating defendants' affirmative defense of contributory negligence. We disagree.

The overriding concerns in both *Dennis* and *VonCannon* were premised upon the earlier pleading rules that any material variance between the pleadings and the proof offered at trial constituted a failure of proof. Where the complaint set forth facts indicating defendant's negligence, the facts asserted in defendant's answer to support the affirmative defense of contributory negligence were required to concur with, but not negate, the facts asserted by plaintiff. If defendant asserted facts logically irreconcilable with those in the complaint, defendant's defense of contributory negligence could not prevail and was defeated on its pleadings. This, however, is no longer the law.

North Carolina has since adopted the Rules of Civil Procedure, Chapter 1A-1 of the General Statutes (1967), which abolished the rigid and strict technical requirements of form pleading and replaced these requirements with the more liberal and flexible requirements of notice pleading. *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970); *Smith v. City of Charlotte*, 79 N.C. App. 517, 339 S.E. 2d 844 (1986); *Note*, "Specificity in Pleading Under N.C. Rule 8(a)(1)," 48 N.C.L. Rev. 636 (1970). The adoption of the notice theory of pleading indicated the legislature's intention that controversies be resolved on their merits, ". . . following an opportunity for discovery, rather than resolving them on technicalities of pleading." *Smith*, 79 N.C. App. at 528, 339 S.E. 2d at 851.

In the present case, the parties' pleadings were sufficient to give notice of all theories, claims and facts sought to be proven by each party. We therefore hold that the trial court did not err in submitting the issue of contributory negligence to the jury. Plaintiff's first argument is overruled.

[2]  As the second part of his argument, plaintiff contends that even if the issue of contributory negligence were properly submitted to the jury, the evidence was insufficient to have supported a finding thereof.

While defendant bears the burden of proving contributory negligence, the defendant is entitled to have the issue submitted to the jury if all the evidence and reasonable inferences drawn therefrom and viewed in the light most favorable to defendant tend to establish or suggest contributory negligence. *Atkins v. Moye*, 277 N.C. 179, 176 S.E. 2d 789 (1970); *Coppley v. Carter*, 10

N.C. App. 512, 179 S.E. 2d 118 (1971). In the case before us, the evidence presented the question of whether defendant Blevins actually caused plaintiff to lose control of the car or whether plaintiff lost control first and swerved in front of defendant. There was substantial evidence tending to show that plaintiff was negligent in not keeping a proper lookout and not keeping his car under proper control, allowing it to swerve or drift into Blevins' lane of travel. Such evidence was sufficient for the jury to have found contributory negligence. Plaintiff's argument regarding the sufficiency of the evidence to support a finding of contributory negligence is overruled.

[3] Plaintiff next argues that the trial court erred by admitting evidence of defendant Blevins' prior good driving record. While Rule 404(b) of the N.C. Rules of Evidence prohibits admission of evidence of prior specific acts to show conformity therewith and evidence of a party's prior driving record is inadmissible in automobile cases, *Rouse v. Huffman*, 8 N.C. App. 307, 174 S.E. 2d 68 (1970), our concern on review is whether the admission constituted prejudice. N.C. Gen. Stat. § 1A-1, Rule 61 of the Rules of Civil Procedure, *Broyhill v. Coppage*, 79 N.C. App. 221, 339 S.E. 2d 32 (1986). Because the jury found the defendant negligent, we cannot see how the admission of defendant's good driving record could have influenced the jury's verdict to plaintiff's detriment. We therefore find no prejudicial error.

[4] In his next argument, plaintiff contends the trial court erred by admitting Patrolman Yates' two accident reports because each contained inadmissible hearsay and speculative opinions as to the positions of the vehicles involved in the collision. We disagree.

Under N.C. Gen. Stat. § 8C-1, Rule 803(6) (1986) of the N.C. Rules of Evidence, "Records of Regularly Conducted Activity," highway accident reports may be admissible, as a business records exception to the hearsay rule. To be admissible such reports must be authenticated by their writer, prepared at or near the time of the act(s) reported, by or from information transmitted by a person with knowledge of the act(s), kept in the course of a regularly conducted business activity, with such being a regular practice of that business activity unless the circumstances surrounding the report indicate a lack of trustworthiness. *Fisher v. Thompson*, 50 N.C. App. 724, 275 S.E. 2d 507 (1981). Such reports

may also be admissible as "official" reports under Rule 803(8), "Public Records and Reports," if properly authenticated.

In the present case, the reports were fully authenticated and a proper foundation laid by Trooper Yates' testimony. He stated that he had observed the scene of the accident, had spoken with both drivers and later prepared the first report as part of the standard protocol required of patrol officers—all of which complied with the business records exception.

Plaintiff contends that the reports were inadmissible because they were inherently untrustworthy. Because Yates did not actually witness the collision plaintiff claims the reports were unreliable and therefore incompetent as evidence. The business records exception expressly provides for the use of information from those having first-hand knowledge of the incident in question. Trooper Yates was entitled to report his understanding of the accident as told to him by both plaintiff and defendant. Our careful review of the reports and testimony persuades us that Patrolman Yates did not express an opinion as to how the collision occurred, but merely reported the versions given to him by plaintiff and Blevins during his investigation. In his cross-examination by plaintiff, Patrolman Yates clearly disavowed any assessment of fault on the part of plaintiff. We also note that Yates was allowed to testify as to the contents of his first report without objection by plaintiff, and that the contents of the second report, to which plaintiff did object, clearly gave plaintiff's version of the collision. We fail to see how plaintiff was prejudiced by these reports.

[5] Finally, plaintiff argues that the trial court erred in refusing to allow plaintiff to introduce evidence to rebut defendant's implication that plaintiff had deliberately excluded a second set of skid marks located in the left lane purportedly indicating that defendant's tractor-trailer had tried to stop well before impact. Plaintiff sought to put before the jury the fact that defendant Unifi made its own investigative photos of the accident site. Plaintiff argues that if the skid marks actually existed in the left lane, as defendants claimed, then defendant Unifi would have had photos of those marks and introduced them into evidence. We disagree for several reasons.

Rulings by the trial court regarding the admission of rebuttal evidence are reversible only by a showing of clear abuse of the trial court's discretion, *Gay v. Walter*, 58 N.C. App. 360, 283 S.E. 2d 797 (1981), *on rehearing*, 58 N.C. App. 813, 294 S.E. 2d 769 (1982). Moreover, plaintiff must show that the trial court's denial of plaintiff's request to introduce rebuttal evidence in some way prejudiced plaintiff's case. *Broyhill v. Coppage, supra; In re Lee*, 69 N.C. App. 277, 317 S.E. 2d 75 (1984).

The evidence plaintiff sought to introduce, while possibly helpful to his case, was collateral to the primary issue and too remote in terms of relevancy to have required its admission. At most, the trial court was entitled but not required to have allowed plaintiff's request and its denial, therefore, did not constitute abuse of discretion. Secondly, even if the evidence should have been introduced, it is not at all clear that making the jury aware of the existence of Unifi's photos would have affected their decision. Accordingly, we find

No error.

Judges PARKER and ORR concur.